UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61448-CIV-COHN/SELTZER

DONN LILES,

    Plaintiff,

vs.

STUART WEITZMAN, LLC,

    Defendant.
_____/

## ORDER ON MOTION FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, MOTION TO STRIKE DEFENDANT'S MITIGATION AFFIRMATIVE DEFENSE

THIS CAUSE is before the Court on Plaintiff's Motion for Protective Order, or, in the Alternative, Motion to Strike Defendant's Mitigation Affirmative Defense (DE 22) and the Court being sufficiently advised, it is hereby ORDERED that the Motion for Protective Order is GRANTED and the Motion to Strike Defendant's Mitigation Affirmative Defense is DENIED for the reasons set forth below.

Plaintiff Donn Liles brings this action under the Age Discrimination in Employment Act ("ADEA") and the Florida Civil Rights Act of 1992 ("FCRA") against his former employer, Stuart Weitzman, LLC. Plaintiff alleges that Defendant terminated his employment as Chief Information Officer ("CIO") because of his age (60 years) and replaced him with a substantially younger information-technology professional (55 years). Defendant contends that it discharged Plaintiff, among other reasons, for failing to satisfactorily complete the job duties for which he was hired.

On January 11, 2010, Plaintiff served supplemental responses to Defendant's Interrogatories, identifying 47 companies that he had contacted for work as a consultant. On February 11, 2010, Defendant issued subpoenas *duces tecum* to the 28 domestic corporations listed, seeking production of Plaintiff's employment records.[1] According to Plaintiff, before the subpoenas were issued, he had been in regular contact with these companies, actively seeking employment. After the subpoenas were issued, four of the companies contacted him to inquire "what was going on." Liles Unsworn Declaration ¶ 7 (DE 22-3). Plaintiff states that the remaining 24 companies "are no longer in communication with [him]. Id. He opines that "[b]ecause of the services [sic] of these subpoenas, [his] efforts seeking work have been severely damaged, and [he] is unable to get work." Id. at ¶ 9.

According to Plaintiff, at his March 25, 2010 deposition he mentioned two companies that he had not yet contacted to seek employment – Kikomo Ltd. and World Wide Dreams. Thereafter, Defendant notified Plaintiff that it intended to serve subpoenas *duces tecum* on these two companies. The subpoenas seek essentially all of Plaintiff's

---

[1] Plaintiff did not object to these subpoenas. He, however, explains that although Defendant's notice of intent to serve the 28 subpoenas was allegedly served on February 11, 2010, Plaintiff's counsel did not received the notice in the mail until February 16, 2010, and she did not see it until the next day. Because several of the companies responded to the subpoenas as early as February 19, 2010, Plaintiff believes that Defendant must have served the subpoenas at the same time it sent him the notice of intent to serve. According to Plaintiff, he therefore did not have sufficient time to object. Additionally, Plaintiff argues that his non-objection to previous subpoenas does not bar him from objecting to the subject subpoenas.

employment records.[2]

Plaintiff now moves the Court to enter a protective order prohibiting Defendant from serving the subpoenas on the ground that they are "cumulative, harassing, and defendant's continued fishing expedition will cause more harm than the potential benefit." Motion at 3 (DE 22). Additionally, Plaintiff argues that if Defendant is permitted to serve the subject subpoenas on Kikomo Ltd. and World Wide Dreams (the companies that he has not yet contacted) he fears they too will refuse to communicate with him.[3]

---

[2] More specifically, the subpoenas *duces tecum* seek production of the following records:
1. Any and all applications for employment.
2. Any and all personnel/employment records.
3. Any and all references provided.
4. Any and all time, attendance, wage and salary records, payroll records, W-2 forms and tax withholding records.
5. Any and all evaluations or employment performance, names of supervisors and/or managers, job descriptions, job training information, manuals, documentation relating to employee discipline, statements of employer/employee policies, resignation, discharge or termination documents, employment contracts, complaints against the employee, commendations, awards or statement of praise regarding the employee.
6. Any and all documents concerning claims for workers' compensation, medical records, unemployment compensation records and claims, insurance claims.

Subpoenas (DE 22-2).

[3] Plaintiff also argues that the subject subpoenas are untimely because Defendant intended to serve them on April 9, 2010, the last day of the discovery period (which the District Court has previously declined to extend.). See March 31, 2010 e-mail from Defendant's counsel to Plaintiff's counsel (DE 32-1) ("We intend to issue the foregoing [subpoenas] on April 9, 2010, in the absence of a protective order or other court mandate restricting same."). Local Rule 26.1.F.2 provides that "[w]ritten discovery requests and **subpoenas seeking the production of documents** must be served in sufficient time that

Plaintiff's argument that Kikomo Ltd. and World Wide Dreams would not hire him were Defendant permitted to serve the subject subpoenas is premised on the assumption that the other companies from which he has sought employment did not hire him because they received subpoenas. Although Plaintiff opines in his Unsworn Declaration that he is unable to find employment because of the subpoenas served on prospective employers, he has failed to proffer any evidence demonstrating that any company has failed to hire him as a result of the receipt of a subpoena. Indeed, Plaintiff acknowledged at his deposition that he had no evidence that he ever lost a business opportunity because of service of the subpoenas. March 25, 2010 Deposition Transcript at 16-19 (DE 31-2). The Court, therefore, cannot grant Plaintiff's Motion because of any alleged harm. But the Court does finds that a protective order is warranted for another reason. According to Defendant, subpoenas directed to potential employers are relevant to its mitigation affirmative defense. Although a few of the documents sought may be relevant or likely to lead to admissible evidence, the subpoenas as drafted are extremely overbroad for this purpose. Moreover, only documents after Plaintiff's termination would be relevant to a mitigation defense, yet these subpoenas are not limited in time.

This, however, does not end the Court's inquiry. In response to Plaintiff's Motion

---

the response is due on or before the discovery cutoff date." (emphasis added). It is unlikely that Defendant could have served the subpoenas on the last day of the discovery period and obtained production of the documents on the same day. It, therefore, appears that the subpoenas are untimely. However, because Plaintiff raised the timeliness issue for the first time in his Reply Memorandum, Defendant has not had an opportunity to respond. The Court, therefore, will not grant Plaintiff's Motion for Protective Order on this ground. The Court notes that upon Plaintiff's filing of the instant Motion on April 5, 2010, it entered an Order (DE 28) prohibiting Defendant from serving the subpoenas until further Order of the Court.

for Protective Order, Defendant states that at Plaintiff's deposition, he identified Kikomo Ltd. and World Wide Dreams not as prospective employers (as Plaintiff suggests), but as other companies for whom he had performed information technology services similar to those that he had performed for Defendant. According to Defendant, it intends to serve the subject subpoenas on these companies as former employers. Defendant argues that because Plaintiff previously worked for these companies, "information relative to his performance implementing similar Information Technology (IT) systems [is] discoverable and 'relevant to the claim of defense' of Defendant." Response at 3 (DE 31). As concerns the relevance of the records sought, Defendant states that it "may choose to address certain areas of Liles' demonstrative incompetence relative to his performance at Defendant" or "if documents obtained from these entities indicate that Plaintiff had similar issues with software implementation projects, Defendant may aver that Plaintiff misrepresented his qualifications for employment, which was to implement these IT programs." Id. Although not artfully stated, it appears that Defendant's relevancy argument is two-fold: (1) the records sought may reflect Plaintiff's poor performance in providing IT services for former employers, which would be relevant to Defendant's defense that it discharged Plaintiff for not being able to perform his job functions; and (2) the records sought may reflect that Plaintiff misrepresented his qualifications to Defendant, which would be relevant to an after-acquired evidence defense.

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain through discovery "any nonprivileged matter that is relevant to any party's claim or defense" and "for good cause, the court may order discovery of any matter relevant to the subject matter

5

involved in the action." Fed. R. Civ. P. 26(b)(1). Further, "[r]elevant information need not be admissible as long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  Additionally, where good cause exists, a court may enter a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Such protective order may, *inter alia*, forbid the discovery, limit the scope of discovery, and/or require the discovery to be taken in a different manner than that chosen by the party seeking discovery. See Fed. R. Civ. P. 26(c)(1)(A-H).  The scope of discovery under a Rule 45 subpoena to non-parties is the same as that permitted under Rule 26. Ireh v. Nassau Univ. Med. Ctr., No. CV-06-09 (LDW)(AKT), 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008) ("Any subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.") (internal quotation marks omitted); Stewart v. Mitchell Transport, No. 01-2546-JWL, 2002 WL 1558210, at 3 (D. Kan. July 8, 2002) ("It is well settled . . . that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rules 26(b) and 34").

Defendant first contends that it "may choose to address certain areas of Liles' demonstrative incompetence relative to his performance at Defendant." Response at 3 (DE 31).  Defendant, however, has cited no authority to support his argument that a plaintiff's employment records from his former employer are relevant (or are likely to lead to admissible evidence) to demonstrate poor performance while employed by the defendant. Moreover, courts considering the issue have held to the contrary. See, e.g., Sanders v. Dalcraft LLC, No. 3-09-CV-0307-P, 2009 WL 1392602, at *2 (N.D. Tex. May

6

18, 2009) (rejecting argument that employment records from plaintiff's former employer "may show performance deficiencies similar to those relied upon by [the defendant] to justify termination"); Ireh, 2008 WL 4283344, at *5 (ruling that plaintiff's performance during prior employment not relevant to work performed for defendant and that prior employment records not likely to lead to discovery of admissible evidence as such evidence would be inadmissible under Federal Rule of Evidence 404(a)); Maxwell v. Health Center of Lake City, Inc., No. 3:05-CV-1056-J-32MCR, 2006 WL 1627020, at *4 (M.D. Fla. June 6, 2006) (ruling that plaintiff's performance at previous jobs not relevant nor reasonably calculated to lead to admissible evidence because Rule 404(a) would exclude such evidence).

The decision in Chamberlain v. Farmington Savings Bank, No. 3-06CV-01347 (CFD), 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) is instructive. In Chamberlain, an age and disability discrimination case, the defendant served subpoenas *duces tecum* on the plaintiff's former employers seeking the production of the plaintiff's prior employment records. In response to the plaintiff's motion to quash the subpoenas and for protective order, the defendant argued that the plaintiff's performance history was relevant to its defense that it terminated the plaintiff's employment because of poor performance. In rejecting that argument, the court stated:

> The defendant's argument is unavailing. The court finds that evidence of the plaintiff's performance history is neither relevant nor admissible for the purpose of showing that the plaintiff performed poorly in his position with defendant. First, the plaintiff's performance history is not relevant to the issues involved in the current case; rather, at issue is the plaintiff's performance in his position with the defendant. Second, the

7

>   defendant's request for production of documents relating to the
>   plaintiff's performance history is not reasonably calculated to
>   lead to the discovery of admissible evidence. The defendant
>   seeks to discover evidence of the plaintiff's performance
>   history in order to show that he had a propensity for certain
>   performance deficiencies. Such evidence is inadmissible
>   under Federal Rule of Civil Procedure 404(a), which provides
>   that "[e]vidence of a person's character or a trait of character
>   is not admissible for the purpose of proving action in
>   conformity therewith. . . ." Fed. R. Evid. 404(a).

Id.

This Court agrees with the reasoning of Chamberlain. Accordingly, the Court concludes that Plaintiff's performance history does not provide a sufficient basis for the discovery of his prior employment records.

Defendant next argues that "if documents obtained from [Plaintiff's former employers] indicate that Plaintiff had similar issues with software implementation projects, Defendant may aver that Plaintiff misrepresented his qualifications for employment, which was to implement these IT programs." If by this statement Defendant is arguing that discovery of Plaintiff's prior employment records may assist it in establishing an after-acquired evidence[4] defense, this argument is also unavailing.

In McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995), the Supreme Court recognized the after-acquired evidence defense under which an employee's relief may be limited by evidence of wrongdoing discovered after the

---

[4] "After-acquired evidence refers to facts discovered by an employer after the employer has already fired an employee, which could justify-post-hoc the decision to terminate the employee." Naylor v. Rotech Healthcare, Inc., No. 1:108-CV-95, 2009 WL 5206005, at *1 (D. Vt. Dec. 23, 2009).

employee's termination;[5] the plaintiff's wrongful conduct must have been of "such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." Id. at 362-63. The McKennon Court cautioned against potential abuse of the discovery process by employers seeking to limit their liability through an after-acquired evidence defense.  The Court, however, noted that the lower courts could curb such abuses, stating: "The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the [Age Discrimination in Employment Act] is not an insubstantial one," but one that can be deterred by 'invok[ing] the appropriate provisions of the Federal Rules of Civil Procedure." Id. at 363.[6]

The Eleventh Circuit has not addressed the scope of discovery permissible to establish an after-acquired evidence defense.  At least three district courts in the Eleventh Circuit, however, have considered the issue.  In Premer v. Corestaff Services, L.P., 232 F.R.D. 692 (M.D. Fla. 2005), the court stated that although "the after-acquired evidence

---

[5] The McKennon Court ruled that after-acquired evidence should not be used to determine liability because "[t]he employer could not have been motivated by the knowledge it did not have. . . ." 513 U.S. at 360. Rather, after-acquired evidence may only be used in fashioning the plaintiff's remedy: "neither reinstatement nor front pay is an appropriate remedy" and back pay should be calculated only "from the date of the unlawful discharge to the date the new information was discovered." Id. at 361-62.

[6] McKennon involved an employee who was found, after the commencement of her discrimination action under the Age Discrimination in Employment Act, to have violated the defendant employer's policies while working for the defendant (i.e., surreptitiously copying and retaining confidential documents).  The Eleventh Circuit, however, has held that the after-acquired evidence doctrine is also applicable to Title VII and Equal Pay Act cases and extends also to an employee's fraud in the application process, not only to an employee's wrongful conduct during employment. Wallace v. Dunn Constr. Co., Inc., 62 F.3d 374 (11th Cir. 1995) (*en banc*).

doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery." Id. at 693.  The court noted that "district courts have limited employers' fishing-expedition style discovery" based on McKennon's concern about employers undertaking extensive discovery into an employee's performance and background to limit liability.  Id. at 693 (citing Perry v. Best Lock Corp., No. IP 98-C-0936-H/G, 1999 WL 33494858, at *2 (S.D. Ind. Jan. 21, 1999) ("The McKennon] Court's comment about potential abuse clearly implies that discovery is not warranted for the sole purpose of developing a possible after-acquired evidence defense.")).  And in Maxwell v. Health Center of Lake City, Inc., 2006 WL 1627020, at *5, the court likewise ruled that the after-acquired evidence doctrine "should not be used to independently initiate discovery."  Id.  Rather, a defendant "must have some pre-existing basis to believe that after-acquired evidence exists before it can take additional discovery."  Id.  More recently, in EEOC v. Jack Marshall Foods, Inc., No. 09-0160-WS-M, 2010 WL 55635, at *2 (N.D. Ala. Jan. 4, 2010), on appeal, the district court upheld a magistrate judge's order quashing subpoenas *duces tecum* seeking to obtain employment records from the intervening plaintiffs' former employers.  The defendant argued that the records might contain after-acquired evidence, which could limit the plaintiff's damages.  The magistrate judge ruled that a defendant cannot seek discovery to assist in establishing an after-acquired evidence defense "in the absence of some basis for believing that after-acquired evidence of wrongdoing will be revealed."  Id.; see also Sanders, 2009 WL 1392602, at *2 ("Courts generally agree that the after-acquired evidence defense 'cannot be used to pursue discovery in the absence of some

10

basis for believing that after-acquired evidence of wrong-doing will be revealed.'") (quoting Chamberlain, 2007 WL 2786421, at *2).

Defendant here has not proffered any evidence suggesting that Plaintiff may have engaged in any wrongful conduct that would provide legitimate grounds for Plaintiff's discharge. Accordingly, the Court will not permit discovery of Plaintiff's prior employment records for the purpose of seeking to find some evidence of wrongful conduct by Plaintiff. Defendant's efforts to obtain the employment records from Plaintiff's former employers on the off-chance that it may find some evidence of wrongdoing is merely a fishing expedition. "District courts need not condone the use of discovery to engage in 'fishing expedition[s]." Rivera v. Nibco, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) (finding magistrate judge's entry of protective order precluding defendant employer from using discovery process to support after-acquired evidence defense proper, noting that "the McKennon Court did not hold that depositions could be conducted for the purpose of uncovering illegal actions.").

In sum, if the subject subpoenas *duces tecum* are intended to seek information from prospective employers to support Defendant's mitigation affirmative defense, they are extremely overbroad. And if the subpoenas are intended to seek information showing Plaintiff performed poorly at his former employment to support Defendant's defense of unsatisfactory performance, the records sought are not relevant nor are they likely to lead to admissible evidence. Additionally, because Defendant has failed to demonstrate that it has any basis for believing wrongful conduct by Plaintiff may be revealed by the records sought, it is not entitled to discovery to assist in establishing an after-acquired evidence defense. Accordingly, Plaintiff's Motion for Protective Order is GRANTED.

Plaintiff has additionally moved to strike Defendant's mitigation affirmative defense.[7] He contends that "it appears defendant's strategy [in serving subpoenas on potential employers] is to prevent plaintiff from getting work consulting with companies in the United States."[8] Motion at 8 (DE 22). He argues that "[i]f defendant wishes to pursue its quest to subpoena these two companies on plaintiff's network list, its mitigation of damages affirmative defense should be stricken." Id. Defendant responds that "while the injured victim has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment the burden of proving lack of diligence is on the employer." Response at 5 (DE 31) (quoting U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1251-52 (11th Cir. 1997)). Defendant argues that in issuing the subpoenas it was properly investigating the adequacy of Plaintiff's mitigation efforts. The Court agrees that Defendant has not engaged in any improper conduct that would justify imposing the harsh remedy of striking an affirmative defense. Accordingly, Plaintiff's Motion to Strike Defendant's Mitigation Affirmative Defense is DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida, this the 6th day of May 2010.

BARRY S. SELTZER
United States Magistrate Judge

---

[7] Defendant's fifth affirmative defense states: "The Plaintiff has failed to mitigate his alleged losses, injuries or damages, and, therefore, Defendant is not responsible to the extent that Plaintiff could have mitigated his damages and Plaintiff has barred or diminshed his entitlement to damages, if any." Affirmative Defenses ¶ 5 (DE 4).

[8] Plaintiff has not explained why Defendant would want to prevent him from mitigating his damages.

Copies to:

All counsel of record