UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61448-CIV-COHN-SELTZER

DON LILES,

       Plaintiff,

vs.

STUART WEITZMAN, LLC,

       Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion for Final Summary Judgment [DE 34] ("Motion"). The Court has carefully considered the Motion, the parties' related submissions, the record in this case, and is otherwise advised in the premises.

Plaintiff filed an age discrimination suit against Defendant because (1) Plaintiff at the age of 61 was replaced with a 55 year old, and (2) Plaintiff was terminated, 14 months after he was hired, without being given a reason. After substantial discovery, Plaintiff's Response to Defendant's Motion is devoid of any direct or circumstantial evidence to show that age was a factor, much less a but-for cause for Plaintiff's termination. Conversely, Defendant has set forth substantial evidence to show that Plaintiff was fired for legitimate, non-discriminatory reasons. Accordingly, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff alleges age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the Florida Civil Rights Act, § 760(1), Fla. Stat. ("FCRA"). Specifically, Plaintiff claims that Defendant discriminated against him based on age when Defendant terminated Plaintiff from the position as Chief Information Officer ("CIO").

Defendant Stuart Weitzman, LLC is a high-end women's shoe manufacturer founded in 1992 with offices in Fort Lauderdale and New York. From 1992 until approximately 2005, Defendant used a computer system called "Foot Works" for its order fulfillment needs and to keep track of shoes in its Long Island warehouse. Foot Works was manufactured by Comprehensive Computer Systems Incorporated and is also known as "CCSI."

In 2005, based on Defendant's expanding business needs, the company decided to upgrade to a new system to address its information technology requirements. Unlike the CCSI system, which encompassed both "warehousing" and "order fulfillment" in one package, Defendant decided to purchase and integrate two "best of breed" systems for each purpose. "Esssentus" was chosen as the "order fulfillment" system and ILS was chosen as the warehousing system. Essentus and ILS would operate in conjunction and replace the CCSI "Foot Ware" system.

After purchasing Essentus, but prior to its installation, Defendant sought to hire someone with experience in that system to coordinate the implementation. Donn Liles, the Plaintiff, was recommended to Defendant by the President of the company that manufactures the Essentus software. Defendant's management was told that Mr. Liles

had recently overseen the installation of the same software package while working for another apparel manufacturer. Accordingly, Mr. Liles was hired in 2006 as CIO at Defendant to oversee the implementation Essentus and ILS systems.

In June 2006, when Plaintiff began working for Defendant, he created a timeline and budget for the implementation of the Essentus and ILS software systems. Based on Plaintiff's timeline these systems were to be implemented by February 2007. The Essentus and ILS projects did not meet their February 2007 deadlines. In addition, Plaintiff was over budget for both the Essentus and ILS implementations, despite the fact that the installation was never completed. Plaintiff contends the installation took longer than expected and ran over budget because Defendant changed the parameters of the projects, decided in October 2006 to delay the implementation of one software program and decided in April 2007 to eliminate its Long Island, NY warehouse, which eliminated the need for the second software project.

On or around April 2007, Defendant's management decided to scrap the Essentus project. Neither the ILS nor Essentus software packages were implemented within the parameters established by Plaintiff when he was hired in 2006. Plaintiff was informed that he would be terminated from his employment, on or around April 10, 2007. Plaintiff continued to work for and be paid by Defendant through July 2007, during a transition period. Plaintiff worked for Defendant for approximately 14 months prior to his termination.

Plaintiff was replaced with Steve Sielemann. Mr. Sieleman was hired March 28, 2007 (with a April 15, 2007 start date). Mr. Sielemann was initially hired to serve as Director of Information Technology and manage the old CCSI computer system. Mr.

Sielemann was born in 1952 and Plaintiff was born in 1946. When Plaintiff ceased his employment with Defendant he was 61 years old. When Mr. Sielemann began working for Defendant he was 55 years old.

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When deciding a motion for summary judgment, a district court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and must resolve all reasonable doubts against the moving party." Corbitt v. Home Depot U.S.A., 573 F.3d 1223, 1238 (11th Cir. 2009). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to

conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

**1.   The ADEA Framework**

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (citing 29 U.S.C. § 623(a)(1)).[1] "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., --- U.S. ---, 129 S. Ct. 2343, 2350 (2009). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." Id.

A plaintiff in an ADEA claim may "establish a claim of illegal age discrimination

---

[1] Age discrimination claims asserted under the FCRA are analyzed using the same framework as claims asserted under the ADEA. Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997); Brown Distrib. Co. of W. Palm Beach, 890 So. 2d 1227, 1230 n.1 (Fla. 4th DCA 2005).

through either direct evidence or circumstantial evidence." Van Voorhis v. Hillsborough County Bd. of County Comm'rs, 512 F.3d 1296, 1300 (11th Cir. Fla. 2008). When a plaintiff relies on circumstantial evidence to prove a discrimination under the ADEA, courts employ the McDonnell-Douglas burden-shifting analysis. Chapman, 229 F.3d at 1024. Under this framework, Plaintiff must first establish a *prima facie* case of discrimination. Id. A plaintiff may do so by showing that he or she was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual. Id. "The methods of presenting a *prima facie* case are not fixed; they are flexible and depend to a large degree upon the employment situation." Wilson v. B/E Aero., Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).

Plaintiff may also state a *prima facie* case with direct evidence of discrimination. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir.1999). Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Id. (quotation and citation omitted). Such evidence "must indicate that the complained-of employment decision was motivated by the decisionmaker's ageism." Id. at 1358-59. Accordingly, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination." Id. at 1359 (quotation and citation omitted).

"Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court

6

must enter judgment for the plaintiff because no issue of fact remains in the case." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. Chapman, 229 F.3d at 1024. The Eleventh Circuit describes this burden as "exceedingly light." Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983). Defendant's burden is one of production, not proof. Id. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls away and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Chapman, 229 F.3d at 1024.

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id. at 1030. A plaintiff may demonstrate that an employer's reasons were pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). "However, a reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Furthermore, a plaintiff cannot prove pretext merely by arguing or showing that

7

he was more qualified than the person who received the position. Springer, 509 F.3d at 1349. Rather, the plaintiff "must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (quotation marks omitted). Finally, if the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive summary judgment. Chapman, 229 F.3d at 1037.

**2.     The Supreme Court's Decision in Gross**

On June 18, 2009, the Supreme Court issued its decision in Gross which held the following:

> [A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

Gross, 129 S. Ct. at 2352. In describing the import of Gross, the Eleventh Circuit has stated that "[t]he Supreme Court concluded that ADEA claims are not subject to the burden-shifting protocol set forth for Title VII suits in Price Waterhouse. In addition, the Supreme Court ruled out the idea of a 'mixed motive' ADEA claim, instead requiring plaintiffs to show that age was the 'but for' cause of an employment action." Mora v. Jackson Mem. Found., Inc., 597 F.3d 1201, 1203-04 (11th Cir. 2010).

In Gross, the Supreme Court also explicitly stated that "the Court has not definitively decided whether" the McDonnell-Douglas evidentiary framework is appropriate in the ADEA context. Gross, 129 S. Ct. at 2349 n.2. Indeed, even after Gross, the Eleventh Circuit and district courts alike continue to analyze ADEA claims

8

under the McDonnell-Douglas analysis (albeit in unpublished decisions). See, e.g., Guimaraes v. NORS, No. 09-12569, 2010 WL 529296, at *3 (11th Cir. Feb. 16, 2010) (per curiam); Huff v. Power Partners, Inc., 2010 WL 797201, *5 (M.D. Ga. Mar. 4, 2010). Accordingly, this Court will continue to employ McDonnell-Douglas, but will do so with the understanding that Plaintiff must establish age was the but-for cause for his termination, not simply a motivating factor.

### 3.  Plaintiff States a *Prima Facie* Case of Age Discrimination

Plaintiff satisfies the minimal requirements to establish a *prima facie* case. Plaintiff argues that "[he] was fired at age 61 as Stuart Weitzman, LLC's chief information officer and replaced by someone 55 years old. That states a *prima facie* case of age discrimination." DE 44 at 1.

Because Plaintiff points to no additional evidence of age discrimination, Plaintiff's position is in tension with certain, older Eleventh Circuit cases. See Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1443 (11th Cir. 1985) ("The mere fact that one employee is replaced with another who is younger certainly does not, without more, give rise to an inference that age was even considered in the decision to dismiss or demote the first employee."). In Pace v. Southern Ry. System, 701 F.2d 1383 (11th Cir. 1983), the Eleventh Circuit stated the following:

> [I]n no case does the court hold that as a matter of law a *prima facie* case is established if a plaintiff simply shows he is in the protected group, was adversely affected by an employment decision, was qualified and was replaced by one younger than himself. In each of these cases not only was the plaintiff replaced by someone younger but there also was other evidence of discrimination based on age.

Id. at 1390. Here, Plaintiff presented no additional evidence, such as discriminatory comments, a statistical pattern of age discrimination or a showing that Plaintiff's replacement was unqualified to perform the job.

Nonetheless, recent Eleventh Circuit cases clearly state that "'[i]n an ADEA case involving discharge, demotion, or failure to hire, a plaintiff may establish a *prima facie* case by showing: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected.'" Hudson v. Shaw Environmental & Infrastructure, Inc., 267 Fed. App'x 892, 893 (11th Cir. 2008) (quoting Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998)).

Defendant acknowledges that Plaintiff is a member of the protected group and for purposes of the Motion, Defendant does not take issue with whether Plaintiff was qualified to do the job.  Defendant, however, argues that the uncontroverted fact that Plaintiff was replaced by some who was 55 and also a member of the protected class "should end the inquiry as Plaintiff is unable to establish one of the elements of his *prima facie* case." DE 34 at 15-16.  This fact is by no means dispositive as the "replacement by one within the protected category will not preclude proof of a *prima facie* case." Pace, 701 F.2d at 1390 (emphasis in original).

In addition, Defendant contends that it is "preposterous to assert that Mr. Sielemann, at age 55, and only five (5) years younger than Mr. Liles, was substantially younger, and that such shows an inference of age discrimination." DE 34 at 16.  The Eleventh Circuit has held a replacement who is only three years younger is sufficient to establish a *prima facie* case. See Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir. 1997); see also Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (concluding that five year age difference between plaintiff

and his replacement was sufficient to support a *prima facie* case of age discrimination).

Accordingly, the Court finds that Plaintiff has established a *prima facie* case.

### 4. Defendant Sets Forth Legitimate, Nondiscriminatory Reasons for Plaintiff's Termination

Defendant's Motion sets forth seven legitimate, non-discriminatory reasons for Plaintiff's termination. In this regard, Defendant states the following:

> (1) Liles' failure to complete the implementation of the Essentus and ILS systems at all, let alone on time, despite the fact that it was he, not his supervisors, who created the implementation timelines and parameters [DE 34-2 at 108-112]; (2) Liles' failure to operate within budget constraints despite the fact that he developed the budgets for the implementations [DE 34-2 at 108]; (3) Liles' inability or failure to anticipate and adequately deal with problems integrating OMS with Essentus, despite the fact that he admits that this was his responsibility [DE 34-2 at 110-112]; (4) Liles' failure to partner and collaborate with the team effectively, including external vendors and internal managers, in order to implement ILS and Essentus [DE 34-5 at 18]; (5) Liles' failure to engender the trust and confidence of subordinates despite the fact that he had hired many of them [DE 34-1 at 60-64]; (6) Liles' spending an inordinate amount of time and money tying to convert data with little to no success [DE 34-1 at 48]; and, finally, (7) the fact that Liles' area of expertise was no longer necessary when the new software project was discontinued [DE 34-1 at 47.].

DE 34 at 17. Obviously, Defendant's counsel has painstakingly sought to articulate as many separate reasons as possible. The Court finds that the above reasons essentially break down into four separate categories: (1) Plaintiff failed to implement the two computer systems within the agreed time and budget constraints; (2) Plaintiff did not adequately address the problems which arose with the implementation; (3) Plaintiff did not work well with his fellow employees or outside vendors, and (4) Plaintiff's expertise was no longer necessary because Defendant decided to scrap the two new computer systems. The Court finds that each of these four reasons is legitimate and could provide a basis for termination.

11

### 5. Plaintiff Fails to Rebut Defendant's Legitimate, Nondiscriminatory Reasons

Plaintiff does not rebut each of Defendant's proffered reasons head on. Instead, Plaintiff argues that all of Defendant's reasons are *post hoc* justifications rather than the real causes of Plaintiff's termination. Plaintiff contends that these reasons are "heretofore unexpressed concerns" and the Defendant has provided shifting explanations and inconsistent statements. See DE 44 at 14-17.

Accordingly, Plaintiff seeks to undermine the credibility of the two executives involved in Plaintiff's termination. Phillip Kodroff, Defendant's vice president for finance, was Plaintiff's "titular supervisor." DE 44 at 6. Greg Ribatt was a president and chief operating officer for Defendant. It is undisputed, based on Plaintiff's testimony, that Ribatt was the one who informed Plaintiff that he was fired. See DE 44 at 8.

At his deposition, Ribatt repeatedly stated that could not recall who made the decision to terminate Plaintiff. At one point, Ribatt testified that he believed that Kodroff made the decision. See DE 34-5 at 32:20-23. Conversely, Kodroff testified that he did not decide to terminate Plaintiff nor recommend that Plaintiff be terminated. See DE 34-1 at 44:5-8.

Nevertheless, both Kodroff and Ribatt testified that they had conversations regarding Plaintiff's performance. In particular, Kodroff recalled four or five conversations with Ribatt about terminating Plaintiff. See DE 34-1 at 44:21-25. In his deposition, Kodroff testified as follows:

> Mr. Liles was hired as this chief information officer, and the fact of the matter is if he never really finished [the Essentus/ILS] install, there really was no need for a chief information officer because technically the company didn't [change anything]. It still [was] on [the old] systems; nothing's changed. . . . We hired him to be our chief information officer because once the [new] system . . . is up and running there was a whole new world of stuff we can do . . . we never got there.

12

DE 34-1 at 47:1-18. In addition, Kodroff testified about disagreements regarding some of the individuals Plaintiff hired, id. at 49:20-22, the fact that Plaintiff "manage[d] behind closed doors," id. at 50:19, and difficulties Plaintiff encountered with outside vendors. Id. at 70:12-15.

On the other hand, Ribatt had only "general recollections about discussions about Mr. Lile's performance" with Kodroff. DE 34-5 at 36:2-3. Ribatt recalled that such discussions related to Plaintiff's "ability to collaborate and partner, and the status and projects of some of the projects that we discussed earlier." Id. at 36:6-9. Ribatt testified that Plaintiff was ineffective in bringing the computer projects to completion within either the time frame or the budget. Id. at 39:14-20. Ribatt also recalled that Plaintiff had "challenges" working with outside vendors. Id. at 62:16.

In its Reply, Defendant responds as follows to Plaintiff's arguments:

> Here, quite simply, there is no conflicting testimony relative to material facts surrounding Liles' termination. While Ribatt or Kodroff may not recall specific events that occurred over four years ago, or have an opinion as to a matter about which the other testified, they are certainly not required to recite, verbatim, each and every nondiscriminatory reason provided by the other. Neither of these individuals denies that he was involved in the decision-making process, and, the reasons for the discharge remain consistent.

DE 46 at 6 (emphasis in original).

The Court agrees with Defendant. Particularly with respect to the reasons that the implementation of the Essentus and ILS systems cost more and took longer than expected and ultimately neither system was installed. These facts are undisputed and both Kodroff and Ribatt testified that these were reasons for Plaintiff's termination. To survive summary judgment, a plaintiff must "proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual . . . ." Chapman, 229 F.3d at 1025. In his Response,

13

Plaintiff cites the Supreme Court for the following proposition: "'[T]here may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.'" DE 44 at 14 (quoting Burdine, 450 U.S. at 256). Here, Plaintiff's initial evidence is weak. Plaintiff's counsel undoubtedly engaged in effective cross-examination. Yet the undisputed fact that the Defendant scrapped the systems Plaintiff was hire to implement and oversee squarely supports the Defendant's reason for Plaintiff's termination. Accordingly, Plaintiff's failure to rebut this reason entitles Defendant to summary judgment.

There are additional reasons which reinforce the Court's determination that summary judgment is warranted in this case. First, "[t]he Eleventh Circuit has consistently held that a party's conclusory allegations, without more, are insufficient to enable the non-moving party to withstand summary judgment." Bozeman v. Per-Se Techs., Inc., 456 F. Supp. 2d 1282, 1315 (N.D. Ga. 2006) (citing Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)); see also Bassano v. Hellmann Worldwide Logistics, Inc., 310 F. Supp. 2d 1270, 1280 (N.D. Ga. 2003) (granting summary judgment because "there is simply no evidence of age or gender discrimination other than Plaintiff's own subjective beliefs"). In this case, the following exchange took place at Plaintiff's deposition:

> Q: Why were you let go, as far as you understand it, from Stuart Weitzman.
>
> A: No reason was given.
>
> Q: Did anybody ever make a comment to you when you worked at Stuart Weitzman about your age?
>
> A: No.
>
> Q: Did anybody put anything in writing to you or otherwise that you saw that remarked about your age when you were employed at

>       Stuart Weitzman.
>
> A:    No.
>
> Q:    Why do you think you were let go?
>
> A:    I think it was because of my age.
>
> Q:    Why?
>
> A:    Because without warning, notice or any hint whatsoever I was to go and meet Gregg [Ribatt] for dinner in the city, and he called me into his office and said I absolutely feel awful, but I'm going to let you go.
>
> Q:    That's why you think you were let go, because of your age?
>
> A:    Yes.

DE 34-2 at 91-92.

Second, Plaintiff was hired when he was 59 and fired, 14 months later, when he was 61. Therefore, Plaintiff was well-within the protected age range when he was hired. "[T]hese facts may give rise to a permissible inference that no discriminatory animus motivated [Defendant's] actions." Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1443 (11th Cir. 1998) (emphasis added); see also Grossmann v. Dillard Dep't Stores, 109 F.3d 457, 459 (8th Cir. 1997) (stating that the plaintiff's contention that the decisionmaker who had hired her had "suddenly turned against older workers four years" after he had hired her and discharged her due to age discrimination was "more than reasonable people can swallow"); Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) ("In cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the

15

adverse action taken by the employer.").[2]

Here, the time span between the hiring and termination of Plaintiff spanned only 14 months. In <u>Lowe v. J.B. Hunt Transport, Inc.</u>, 963 F.2d 173 (8th Cir. 1992), the Eighth Circuit reviewed a directed verdict granted in favor of the defendant in an age discrimination case where the plaintiff was fired after only two years of employment. The court stated that "[i]t is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later." <u>Id.</u> at 175.[3]

Plaintiff argues that such an inference is impermissible because Ribatt fired Plaintiff and only Kodroff, not Ribatt, was involved in Plaintiff's hiring process. Even though Ribatt formally terminated Plaintiff, the evidence reveals that both men were involved in the decision. In any event, the Court has already determined that Plaintiff failed to rebut Defendant's legitimate, non-discriminatory reasons for his termination. The fact that Plaintiff was hired when he was 59 does not alter the Court's decision, it merely reinforces it.

This case is similar to <u>Phillips v. Aaron Rents, Inc.</u>, 262 Fed. Appx. 202 (11th Cir. 2008). There, the Eleventh Circuit affirmed summary judgment based on the following reasoning:

---

[2] <u>But see</u> <u>Wexler v. White's Fine Furniture</u>, 317 F.3d 564 (6th Cir. 2003) ("We therefore reject the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual."). Eleventh Circuit precedent allows for only a "permissible inference."

[3] The Eighth Circuit subsequently narrowed the reach of <u>Lowe</u> to only those cases in which a plaintiff does not offer evidence of overt discrimination. <u>See</u> <u>Madel v. FCI Mktg.</u>, 116 F.3d 1247, 1253 (8th Cir. Mo. 1997). As discussed herein, Plaintiff offers no such evidence.

16

> First, [plaintiff] failed to offer any evidence that [defendant's] true reason for terminating him was based on his age. [Plaintiff] admitted that he was never told that he was terminated due to his age, and he offered no basis for a belief that the [defendant] decision-makers were biased against him due to his age. Although the reasons [defendant] cited for terminating [plaintiff] varied slightly by occasion, that alone does not establish pretext. None of the reasons offered are fundamentally inconsistent with one another and [defendant] never explicitly denied any of these reasons. . . . Also, [defendant's] failure to produce [plaintiff's] annual job evaluations does not give rise to an inference of pretext, because there is no evidence of bad faith. The failure is, at best, a scintilla of evidence, and it only concerns one of the reasons [defendant] gave for terminating [plaintiff]. Thus, we conclude that [plaintiff] did not rebut, head on, all the reasons given by [defendant] for his termination. Accordingly, we find that [plaintiff] failed to present sufficient evidence of pretext, and that his claim for age discrimination must fail.

Id. at 210-11 (citations omitted). Therefore, Defendant's Motion for Summary Judgment is granted.

## IV. CONCLUSION

Based on the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Final Summary Judgment [DE 34] is **GRANTED**. The Court shall enter a separate judgment order consistent with the above ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 16th day of June, 2010.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

17